# Young, Appellant, *v.* Parke, Davis & Company, Incorporated.

*Negligence—Death of horses—Veterinary surgeon—Manufacturing chemist.*

1. In an action against a manufacturing chemist to recover damages for the death of two horses alleged to have been caused by an intravenous injection of a remedy manufactured by the defendant, and prescribed by a veterinary surgeon employed by the plaintiff, a verdict and judgment for the defendant will be sustained where there is nothing more to connect the defendant with the loss than an advertising circular of the remedy in question addressed to veterinarians, and stating that the remedy in question was intended especially for hypodermic use, and referring generally to a magazine article written by a reputable veterinarian describing his use of the preparation intravenously as well as hypodermically.

*Negligence—Evidence—Change of conditions.*

2. In a negligence case evidence of the taking of precaution against the future, after an accident, is not to be considered as an admission of responsibility for the past.


Argued Oct. 20, 1912. Appeal, No. 162, Oct. T., 1911, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T., 1907, No. 4,009, on verdict for defendants in case of George E. Young v. Parke, Davis & Company, Inc. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Trespass to recover damages for the death of two horses. Before MAGILL, J.

The facts are stated in the opinion of the Superior Court.

At the trial the plaintiff offered in evidence certain circulars and letters of the defendants.

For the purpose of showing that after this occurrence the defendants reduced the quantity of nuclein in their nuclein solution from five per cent to two and one-half per cent, that after that they also made certain other changes

in the solution, and changed the preservative from tricresel to another preservative. Furthermore, that they had further reports of this remedy showing cases of what were termed "knockout," where horses were thrown down and had serious shocks from the use of this remedy.

The Court: You mean that is shown by their circular?

Mr. Stearne: By these circulars. I also offer to prove by these circulars that now they recommend its use hypodermically and not intravenously, and furthermore that they advise now its use orally as being just as good as any other way, and they give it orally. I further offer to show that they say it should be used in the initial stages to abort the disease, and subsequently it should only be used in desperate cases, and furthermore that when it is administered orally, it was advised that the dilution was not necessary. Objected to. Objection sustained. [2]

The court charged in part as follows:

[Now, gentlemen, it is contended by the plaintiff in this case that by reference to this article which I have just read, the article by Dr. Voorhees, in their circular which they sent out to the profession, the defendants thereby became responsible for that which Dr. Voorhees says, as I understand the theory of the plaintiff's case, and that they adopted Dr. Voorhees' article—the defendants adopted Dr. Voorhees' article as their own; and that Dr. Vansant was therefore justified in acting upon the advice of Dr. Voorhees or the suggestion of Dr. Voorhees or the result of his experiments, whatever it may be, as contained in this article. I cannot agree with that view of this case, nor do I understand the law to be that by the mere reference to an article such as this, written by a professional man to his professional brethren—I say I cannot understand that by mere reference to such an article by the proprietors of the medicine in this case, the defendants, in their literature which they sent out, that they thereby adopted that which Dr. Voorhees had written as their own, nor do they assume authorship of it, nor is any

veterinarian using the remedy thereby justified in relying solely and entirely upon what Dr. Voorhees says was the result of his experiments, and if action based solely upon such reliance results in injury or loss, then such injury or loss could not be attributed to any act of the defendants in this case.] [3]

[In other words, it may or may not be a custom among veterinary surgeons, as testified, to adopt the word or the suggestion of manufacturing chemists, and to use or prescribe medicines which they may put upon the market, without inquiry or investigation or experimentation, but whether there is or is not such custom, it does not relieve the veterinarian, the professional man, from his professional responsibility. And that must be considered in this case as one of the important features of it.

In other words, it is the duty of the doctor administering a remedy to judge for himself what the conditions are, and whether the condition in which he finds his patient justifies the administration of a particular remedy under the circumstances, and it is his duty also to know something about what that remedy is, and the effect of its use.] [4]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (2) ruling on evidence, quoting the bill of exceptions; (3, 4) above instructions, quoting them.

*Allen M. Stearne*, for appellant, cited: Bloomer v. Snellenburg, 221 Pa. 25; Polenske v. Lit Bros., 18 Pa. Superior Ct. 474.

*Sheldon Potter*, of *Potter, Dechert & Norris*, for appellees, cited: Mertz v. Detweiler, 8 W. & S. 376; Wohlert v. Seibert, 23 Pa. Superior Ct. 213; Ray v. Burbank & Jones, 61 Ga. 505; Baran v. Reading Iron Co., 202 Pa. 274; Matteson v. R. R. Co., 218 Pa. 527.

OPINION BY HENDERSON, J., March 1, 1912:

The plaintiff owned two horses which were sick from influenza. He thereupon employed Dr. Vanzant, a veterinary surgeon of the vicinity, to take charge of them for treatment. One of the remedies applied by the surgeon was an intravenous injection of a solution of nuclein. The effect of this treatment, as claimed by the plaintiff, was that both of the horses died. The solution used was prepared by the defendant, a corporation extensively engaged in the manufacture of medical supplies. The negligence charged is that the defendant expressly represented that the preparation referred to could be safely used by intravenous administration in the treatment of influenza and kindred diseases of animals. A catalogue issued by the defendant, containing a list of medical preparations manufactured by it, was offered in evidence to show that nuclein solution was one of its preparations sold for veterinary use. A statement was therein made that the preparation was according to the formula of Drs. Vaughn and McClintock. There was also published in connection with the announcement of the remedy a description of the character of nuclein and its pathologic effect as developed in the practice of Dr. Hahn, of the University of Munich, and Von Mayer of Prague. The article contained the following information: "This solution contains 5 per cent nucleinic acid from yeast, and is intended especially for hypodermatic use. . . . Dilute with an equal quantity of freshly boiled 0.9 per cent salt solution." There was also in the same connection the following reference: "See reports of Dr. E. R. Voorhees ('Nuclein Considered as a Therapeutic Agent in Veterinary Practice'), American Veterinary Review for April, 1905." It is not claimed that the defendant's catalogue recommended the remedy for intravenous administration, but the appellant contends that the defendant is responsible for the recommendations of Dr. Voorhees published in the Veterinary Review, because of the reference to his article in its catalogue as above quoted. The evidence shows

that Dr. Voorhees is a reputable veterinary surgeon and a contributor to the American Veterinary Review, and that the article referred to was printed in April, 1905. The author describes the composition and character of nuclein and gives an account of its use and value in medical practice and narrates his experience with it as a veterinary remedy. He states that he had used it intravenously with good results in horses having pneumonia and other like diseases; that he also used it hypodermatically. The only reference to the defendant in the article is in the concluding period: "The firm of Parke, Davis & Company have promised to put the remedy in hermetically sealed tubes as soon as a sufficient demand is created." It perhaps may be inferred that the form of nuclein used by the author of the article was that prepared by the defendant, but it is nowhere so stated and it may well be doubted whether we are justified in concluding that that is so, for the preparation is not an invention of the defendant. The very article on which the plaintiff relies to charge the defendant states that nuclein has been used for many years; that the medical profession is entitled to the credit for discovering its value and applying it in practice and that manufacturing chemists have found that the most reliable source from which to obtain it is the vegetable kingdom, especially from yeast. Its use as a veterinary remedy is somewhat recent and was at this time perhaps in an experimental stage, but its general therapeutic value was well known in the medical profession according to the evidence. If we assume, however, that the preparation used by the author of the article in the Review was prepared by the defendant the plaintiff's case can only be sustained on the theory that the defendant is responsible for the author's account of his experience as a veterinarian in the use of nuclein because reference was made to his publication. But the plaintiff never saw the catalogue nor Dr. Voorhees' article. It is through Dr. Vanzant that he has any relation to the defendant and when we examine the testimony of Dr. Vanzant we

find that he is not able to state whether he first saw Dr. Voorhees' article in the Veterinary Review or the reference to it in the catalogue of the defendant. He was a subscriber to the Review and saw the article in it and it may well have been that his information as to Dr. Voorhees' experience in the use of nuclein was derived from the Review and not from the defendant's catalogue. At any rate it is clear from his testimony that because of what he read in the article of Dr. Voorhees and his confidence in the formula of McClintock and Vaughn, two professors of veterinary medicine of repute, he gave consideration to the use of nuclein and commenced to administer it in his practice. He had administered the defendant's preparation of it previously to two horses in the same manner practiced in the case of the plaintiff's horses and without detriment to either animal. In so doing he acted on his own responsibility. He is a graduate veterinary surgeon and undertakes to have and exercise such knowledge and skill as are commonly possessed by educated veterinary surgeons, and he assumes the responsibility for the propriety of the treatment adopted by him. The dissemination of medical knowledge comes largely from the exchange of experiences among practitioners in that profession and the individual takes advantage of the experiments and professional observations of men in the same calling, but the responsibility for the treatment, regard being had to the condition of the patient and the probable effect of the remedy adopted, rests on the doctor who has charge of the case. The defendant was bound for the accuracy of its preparation according to the formula, but it did not recommend its remedy for general use. It is apparent that it was intended to be applied by a veterinarian and only when in the judgment of that practitioner the case called for such treatment, and particularly is the manufacturer of the drug not to be held responsible for that use which he has not recommended. The mere suggestion that some surgeon of established reputation published information which would be

useful to others in the same profession does not bind the person giving the report to the consequences of the application of the remedy, used by the expert referred to, to other cases. The defendant prepared a remedy in conformity with the prescription of two experienced members of the veterinary profession in the state of Michigan for use by practitioners who approved of that kind of treatment, but it is for the veterinary and not for the chemist to determine whether and when it shall be used. The trial judge submitted to the jury for consideration the question whether the loss sustained by the plaintiff was the result of the negligence of the defendant in placing on the market an article unfit for the use for which it was sold or whether the result of the treatment was due to the manner in which the remedy was administered by the veterinary surgeon, and in this submission the case was as favorably presented for the plaintiff as the facts justified. There is no allegation that the preparation was not according to the formula of Vaughn & McClintock or that it did not contain the kind and quantity of remedy which it was represented to have, and there was no evidence, therefore, of fraud on the part of the defendant. The only evidence that the preparation was wholly unfit for the use intended was that the plaintiff's horses died from its administration, but whether this consequence was to be attributed to the remedy as recommended by the compounder or to the manner of its administration or the condition of the horses at the time of treatment must necessarily have been a question for the jury if the evidence disclosed any responsibility at all on the part of the defendant.

The offer to show that at a later time the defendant changed the formula by reducing the percentage of nuclein contained therein was properly rejected by the court. It is not evidence of negligence that as a result of wider experience and more thorough knowledge of the subject the defendant provided against the possibility of an unexpected effect of the remedy or the inexperience or lack

of judgment of the surgeon in administering it.   To take advantage of one's later and better information is not evidence of negligence.   In Columbia & Puget Sound R. R. Co. v. Hawthorne, 144 U. S. 202, the court considered it to be now settled by the decisions of the highest courts in most of the states in which the question had arisen that the taking of precaution against the future is not to be considered as an admission of responsibility for the past. This was also the conclusion in Hart v. Lancashire & Yorkshire Ry. Co., 21 L. T. (N. S.) 261, and Matteson v. R. R. Co., 218 Pa. 527, holds the same doctrine.   No precedent or principle requires the reversal of the case.

The judgment is affirmed.